# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 50185 | **DATE** | 9/29/2010 |
| **CASE TITLE** | U.S.A. vs. Michael Jackson | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the court denies the § 2255 motion as to all claims, denies the request for an additional evidentiary hearing, and dismisses this cause in its entirety.

*Philip G. Reinhard*

■ [ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT - OPINION

    Michael Jackson, a federal prisoner, filed a motion pursuant to 28 U.S.C. § 2255, challenging his conviction and sentence for two counts of conspiracy to commit a robbery affecting interstate commerce (18 U.S.C. § 1951(a)) and one count of using a firearm during and in relation to a crime of violence (18 U.S.C. § (c)(1)(A)).[1] The government filed a response, and Jackson filed a reply.

    In his § 2255 motion, Jackson raises the following claims based on the ineffective assistance of his trial counsel: (1) failing to challenge the indictment; (2) failing to conduct an investigation; (3) failing to file a motion to suppress; (4) advising Jackson to admit to certain stipulated conduct that was used to enhance his sentence; (5) failing to object to the court's alleged violation of Fed. R. Crim. P. 32i(1)(A); (6) failing to object to the grouping of certain offenses under U.S.S.G. § 3D1.2; and (7) failing to file a direct appeal at his request.

    The motion also raises the following claims not based on ineffective assistance of counsel: (1) his sentence was illegal for lack of jurisdiction and improper use of other conduct to enhance his sentence; (2) his guilty plea was involuntary; (3) the government engaged in prosecutorial misconduct when it used hearsay evidence before the grand jury; and (4) the government engaged in selective prosecution.

    Because the latter four claims are waived based on Jackson's failure to file a direct appeal, he contends that his trial counsel was ineffective because he ignored Jackson's express request to file an appeal. In that regard, the government submitted the affidavit of Michael Phillips, Jackson's trial attorney, who states that Jackson never requested that he file an appeal on his behalf. In turn, Jackson filed his own affidavit in which he asserts that he in fact expressly did direct Phillips to file an appeal and that Phillips failed to do so. Because the opposing affidavits present a question of material fact as to whether Jackson directed Phillips to file a direct appeal, the court conducted an evidentiary hearing as to that issue.

    In <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000), the Supreme Court held that an attorney who disregards his client's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable, 528 U.S. at 477, and, where such error leads to the forfeiture of the proceeding itself, prejudice is presumed, 528 U.S. at 483-84. Therefore, when counsel fails to file a requested appeal, a defendant is entitled to a new appeal without showing that his appeal would likely have had merit. <u>Flores-Ortega</u>, 528 F. 3d at 477.

    At the evidentiary hearing, the government presented the testimony of Phillips along with four letters that

Phillips sent to Jackson. The sole evidence submitted by Jackson was his own testimony.

Jackson testified on direct examination that on the date of his sentencing (August 28, 2008) he told Phillips to file a direct appeal and that Phillips said he would come to the local jail[2] and speak to him. According to Jackson, Phillips never came to the local jail thereafter. Jackson stated he tried calling Phillips several times and never reached him. Several months later, after the time for appeal had expired, Jackson spoke to Phillips via telephone from prison and discovered that Phillips had not filed an appeal. When Jackson asked Phillips why he never filed an appeal, Phillips responded that he did not because Jackson never told him to.

On cross-examination, Jackson admitted that he never stated in his affidavit that he tried to call Phillips. Jackson also stated that he never called the clerk's office about his appeal although he did have his family check with the clerk's office after the time for an appeal had expired. Jackson also admitted that he remembered the court advising him at sentencing that he had the right to appeal and that he could file the appeal himself, ask his lawyer to do so, or have the clerk file the appeal.

The government also referred to the four letters sent by Phillips to Jackson, one dated November 25, 2007, one dated December 17, 2007, one dated August 28, 2008, and one dated October 6, 2008. According to Jackson, he never received any of the letters. Finally, Jackson stated that he eventually found out from relatives that no appeal had been filed and this was about the same time he spoke to Phillips via telephone.

Phillips testified for the government that 10-20% of his legal practice is spent representing criminal defendants in federal court, both as a retained and appointed attorney, including some criminal appeals. He has handled more than 40 criminal cases as a federal panel attorney dating back to 1995.

According to Phillips, he talked to Jackson in the courtroom immediately after the sentencing and advised Jackson that he had 10 days in which to file an appeal.[3] Phillips testified that Jackson responded "okay" to his explanation. He further advised Jackson that he must let him know if he wanted Phillips to file an appeal. According to Phillips, he never heard from Jackson regarding filing an appeal within the 10-day period. Phillips agreed with Jackson that he called Phillips after he was in prison and asked him about the appeal.

Phillips further testified that he sent the four letters (exhibits 1-4) to Jackson. Exhibit 3, a letter sent by Phillips to Jackson at the local jail on the date of sentencing, addressed several issues, including Jackson's right to file an appeal. The letter states that if Jackson wished to file a notice of appeal he should contact Phillips as soon as possible but no later than September 8, 2008. The letter concludes by advising Jackson that if he has "any questions about this or any other matter, please do not hesitate to contact my office."

The government also introduced exhibit 4, a letter from Phillips to Jackson at the local jail dated October 6, 2008. Among other things, the letter states that "I did not file any notice of appeal on your behalf because you did not request me to do so in light of the appellate waiver provision in your plea agreement." Phillips testified that it was an error for him to have referred to the appellate waiver in the letter as Jackson did not waive his appeal rights when he pleaded guilty. Phillips also confirmed that the court advised Jackson of his appeal rights at sentencing.

After carefully considering the evidence and demeanor of the two witnesses, the court finds Phillips to be credible. This finding is based on a combination of his experience as a criminal trial attorney generally and one who has handled a significant number of criminal cases in federal court in particular. Additionally, Phillips expressed a competent knowledge of the rules related to filing a proper notice of appeal in a criminal case. Further his knowledge of criminal appeal procedures is born out by his letters of September 28, 2008, and October 6, 2008.

The court further finds Jackson to be less than credible on the issue of whether he directed Phillips to file an appeal. This is evidenced by the inconsistencies between Jackson's affidavit and his testimony at the hearing. For example, in his affidavit Jackson never mentioned attempting to call Phillips about filing an appeal yet that was the primary focus of his testimony. Further, the court finds it inconceivable that if Jackson engaged in the various efforts to contact Phillips via telephone and letters that he did not file the appeal himself or direct the clerk or his family to file the appeal on his behalf.[4] Further, the court finds it strains credibility that Jackson, who professed to be concerned about his appeal rights, waited nearly a year before seeking relief via a § 2255 motion. Jackson has never asserted in his motion, affidavit, or testimony that he did not know about his right to file an appeal and that he had 10 days in which to do so.

Based on these credibility determinations, along with the affidavits and the evidence at the hearing, the court finds that Jackson never requested or otherwise directed Phillips to file a notice of appeal. Thus, Jackson has not demonstrated ineffective assistance of counsel in this regard.

Relying on this determination, the court finds that Jackson has not established a justifiable reason for failing to file a direct appeal.[5] Having concluded this, the court finds that Jackson has waived those claims otherwise not premised on trial counsel's alleged ineffectiveness.[6] See Morales v. United States, 2007 WL 2343065, *7 (N.D. Ill. June 21, 2007), citing Borre v. United States, 940 F. 2d 215, 217 (7th Cir. 1991).

The court turns next to the remaining ineffective assistance of counsel claims raised in Jackson's motion and that are not waived. In order to establish ineffective assistance of counsel, a petitioner must establish that: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) he suffered resulting prejudice. Gentry v. Sevier, 597 F. 3d 838, 851 (7th Cir. 2010). Regarding performance, a petitioner must overcome a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. Gentry, 597 F. 3d at 851. In order to establish sufficient prejudice resulting from counsel's defective performance, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. Gentry, 597 F. 3d at 851.

Here, Jackson's first claim is that his trial counsel failed to challenge the validity of the indictment. Specifically, he contends that his trial counsel should have objected to the indictment because he was improperly charged with conspiracy under 18 U.S.C. § 371 which resulted in his being sentenced based on the conduct of his co-defendants.

This claim is baseless because Jackson was in fact charged with conspiracy pursuant to 18 U.S.C. § 1951(a). To the extent Jackson argues he was improperly held accountable for the conduct of his co-conspirators under U.S.S.G. § 1B1.3(a)(1)(B), that is not a proper claim under § 2255. Further, the application of an enhancement under § 1B1.3(a)(1)(B) was proper in this case and the failure to object was not error. Accordingly, Jackson has failed to establish ineffective assistance of counsel in this regard.

Jackson next contends that his trial attorney was ineffective for failing to conduct an investigation or file a motion to suppress challenging the credibility of the victims. This claim fails because Jackson waived his right to challenge the credibility of any witnesses when he pleaded guilty and was so advised of that waiver at the time he entered his guilty plea. Additionally, as the government points out, Jackson has not specified what particular investigation should have been done or the precise nature of any motion to suppress.

Jackson further asserts that his trial counsel was ineffective for failing to object to the court's alleged violation of Rule 32i(1)(A). This claims lacks merit for the simple reason that it is belied by the record. At the sentencing hearing the court specifically asked Jackson if he read the presentence report, discussed it with his attorney, and understood it. Jackson answered yes to all three questions. Jackson's counsel was not ineffective in the face of the court's explicit compliance with Rule 32i(1)(A).

Jackson also claims that his trial counsel was ineffective because he failed to object to the court's decision not to group certain offenses pursuant to U.S.S.G. § 3D1.2. Jackson does not specify how the court erred in this regard. Thus, he has failed to make any showing that his trial counsel was ineffective for not objecting to the court's application of § 3D1.2 to the four robbery offenses.

Jackson also contends that trial counsel was ineffective when he advised Jackson to admit to stipulated conduct used to enhance his sentence. This claim is undercut by the court having advised Jackson at the time of his guilty plea that the relevant conduct he now takes issue with would be used at sentencing. Additionally, the written plea agreement in paragraph 7 states that Jackson admits for sentencing purposes that he committed two additional uncharged robberies and that such conduct would be used to compute his sentence pursuant to U.S.S.G. § 1B1.2. Jackson told the court that he read paragraph 7 and that he understood it. Further, when the court explained to Jackson that he was agreeing to the conduct in paragraph 7 (page 4), Jackson stated that he understood that. To the extent Jackson argues in his reply that he would not have signed the written plea agreement had counsel informed him that the stipulated to conduct would be used to enhance his sentence, this argument fails because Jackson admitted to the court that he understood the sentencing impact of his agreeing to the relevant conduct and that he knowingly and voluntarily entered into the plea agreement. Therefore, even if his counsel failed to advise him of the importance of the stipulation, he suffered no prejudice as he was given ample opportunity to object at the time he entered his guilty plea. Accordingly, trial counsel was not ineffective in this regard.

Finally, in his reply brief, Jackson concedes several claims. He concedes that there is no merit to his claim that the court lacks jurisdiction based on the defective indictment and on his claim of prosecutorial misconduct.

As for an evidentiary hearing on any issue other than the one related to trial counsel's failure to file a notice of

| STATEMENT - OPINION |
|---|

appeal, Jackson conceded during the evidentiary hearing that there is no need for an evidentiary hearing on any other issue raised in his § 2255 motion. The court has further determined that no additional evidentiary hearing is required in this case and the request for such is therefore denied.

Separately, though not raised directly in the § 2255 motion, Jackson inquired during the hearing about two guideline calculations subsequently held to be in error in his co-defendant's case. See United States v. Eubanks, 593 F. 3d 645 (7th Cir. 2010). The court notes that Jackson's sentencing guidelines range was calculated at sentencing to be 151-188 months based on his having a base offense level of 32 and a criminal history category of III. Considering this range as advisory only and applying the § 3553(a) factors, the court arrived at a sentence of 168 months.

However, had the court calculated his base offense level without the additional two-level enhancement for abduction (as opposed to restraint) and the four-level enhancement for the use of the BB gun, the base offense level would have been 31. The applicable guidelines range for a base offense level of 31 combined with a criminal history category III would have been 135-168 months. Thus, Jackson's sentence of 168 months is within the alternative guidelines range absent the two and four-level enhancements.

As the court stated at the time of sentence, it would have sentenced Jackson to 168 months even if his base offense level was 31 as opposed to 32. The court then considered the 168-month sentence to be appropriate in this case in light of the advisory guidelines range (whether 135-168 months or 151-188 months) and the § 3553(a) factors considered by the court at the time of sentencing. This explanation is not to be considered part of the disposition of the § 2255 motion but is offered only to answer Jackson's inquiry.

For the foregoing reasons, the court denies the § 2255 motion as to all claims, denies the request for an additional evidentiary hearing, and dismisses this cause in its entirety.

1. Jackson did not file a direct appeal.

2. Jackson was being held at the Ogle County jail pending his transfer to a Bureau of Prison facility to serve his sentence.

3. Under the current version of the applicable rule, the time limit for filing an appeal is 14 days.

4. The court explained to Jackson at the conclusion of his sentencing hearing that he had 10 days in which to file a notice of appeal and that he could direct his attorney to do so, he could do so himself, or he could have the clerk do so.

5. The court notes that while Phillips's letter of August 28, 2008, referred to Jackson having waived his appeal rights via his written plea agreement, the court properly advised Jackson of the extent of his appellate rights and the effect of any waiver during the Rule 11 proceeding. At that time, the court explained to Jackson that he could "appeal matters such as [his] sentence and the like, unless there's been a waiver of that, and I don't think there has." At that point, the prosecutor confirmed that Jackson had not waived his appellate rights. When asked by the court, Jackson stated that he understood his appeal rights.

6. The court need not address the issue of whether Phillips consulted with Jackson about an appeal as Jackson has not raised that claim. See United States v. Bednarski, 481 F. 3d 530, 535 (7th Cir. 2007).